**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey Krivoshey (State Bar No. 295032)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
          apersinger@bursor.com
          ykrivoshey@bursor.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SCOTTY MAHLUM, individually and on behalf of all others similarly situated,<br><br>                                     Plaintiff,<br><br>        v.<br><br>ADOBE SYSTEMS INCORPORATED,<br><br>                                     Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1    Plaintiff Scotty Mahlum ("Plaintiff"), individually and on behalf of all others similarly

2    situated, alleges the following based on information and belief:

3                                    <u>**NATURE OF ACTION**</u>

4         1.    This is a class action challenging Defendant Adobe Systems Incorporated's

5    imposition of early termination fees on its Adobe Creative Cloud subscribers in violation of Civil

6    Code § 1671(d) and other provisions of California law.

7         2.    Defendant provides a subscription-based service for customers to use its popular

8    Adobe Creative Cloud software.  Adobe Creative Cloud includes applications like Photoshop,

9    Illustrator, In design, Adobe Muse and other creative tools.  Defendant's Creative Cloud "complete

10   plan" costs customers $49.99 per month for one year.  Defendant's "individual plan" costs

11   customers $9.99 per month for access to individual programs within Creative Cloud, such as

12   Photoshop.

13        3.    The terms of Defendant's annual subscription agreement (the "Membership Plan")

14   provides for the imposition by Defendant of early termination fees.  The Membership Plan

15   provides that Defendant will impose an early termination fee ("ETF"), whenever a subscriber

16   cancels the service thirty days after subscribing, in the amount of 50% of the remaining balance of

17   the yearly commitment price.  Defendant's ETF is an unlawful penalty for a customer's breach of

18   the annual contract.

19        4.    As is set forth more particularly below, Plaintiff and the members of the proposed

20   plaintiff class are individuals who are or were Creative Cloud subscribers who were subject to,

21   charged and/or paid an ETF.

22        5.    The ETFs have generated substantial revenues and profits for Defendant.  By this

23   complaint, Plaintiff seeks, *inter alia*, to permanently enjoin the enforcement and threat of

24   collection of the ETFs and to recover as damages and/or restitution all ETFs heretofore paid by

25   members of the plaintiff class.

26        6.    The ETFs constitute unlawful penalties that are void and unenforceable under

27   California Civil Code § 1671 ("§ 1671"); unlawful and unfair under California's Unfair

28

CLASS ACTION COMPLAINT                                                                        1

Competition Law, Bus. & Prof. Code § 17200 *et seq.* (the "UCL"); and unconscionable under California Civil Code § 1750 *et seq.*, the Consumers Legal Remedies Act (the "CLRA").

7.      Plaintiff therefore seeks, as alleged with greater particularity below, to (a) permanently enjoin Defendant from collecting the ETFs; (b) recover as damages and/or restitution all ETFs heretofore paid by members of the putative class; and (c) obtain all such other relief to which they may be entitled pursuant to Civil Code § 1671, the UCL or any other applicable provision of California law, including without limitation, disgorgement, actual damages and restitution.

## PARTIES

8.      Mr. Mahlum is a citizen of California, residing in Sacramento.  In or around October 2013, he entered into an agreement with Defendant for the Adobe Creative Cloud complete plan for use by his family.  In or around March 2014, he cancelled his Creative Cloud subscription and was charged and paid a 50% cancellation fee.

9.      Defendant Adobe Systems Incorporated is a Delaware corporation with its principal place of business in San Jose, California.  At all times relevant hereto, Defendant was in the business of providing, *inter-alia*, Adobe Creative Cloud services subject to the Membership Plan to individuals in California and nationwide.

## JURISDICTION AND VENUE

10.      This Court has diversity subject-matter jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 ("CAFA"), which, *inter alia*, amends 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions where, as here: (a) there are 100 or more members in the proposed Class; (b) some members of the proposed Class have different citizenship from Defendant; and (c) the claims of the proposed Class members exceed the sum or value of five million dollars ($5,000,000) in aggregate.  *See* 28 U.S.C. § 1332(d)(2) and (6).

11.      This Court has personal jurisdiction over Defendant because Defendant is registered with the California Secretary of State to conduct business within California, has its

headquarters in California, and conducts substantial business within California, such that Defendant has significant, continuous and pervasive contacts with the State of California. Further, Defendant's terms of use include a choice of law clause requiring an agreement that the laws of California apply to contracts between Defendant and residents of North America.

12.     Venue is proper in this Court under 28 U.S.C. § 1391(b) and N.D. Cal. Local Rule 3-2(e) because Defendant transacts significant business within this District and is headquartered in this District.  Venue is proper under 28 U.S.C. § 1391(c) because Defendant is subject to personal jurisdiction in this District.  Venue is also proper because the terms of the Membership Plan provide that all claims between Defendant and its subscribers must be resolved by a court located in Santa Clara County, California, United States of America.

## FACTUAL ALLEGATIONS

13.     Defendant provides software platforms and services that allow its customers to create and manage digital content across "every channel and screen."

14.     Defendant's current Creative Cloud subscription-software is downloaded once from the internet directly onto a customer's desktop or device and can only be used as long as the customer's subscription remains valid.  Adobe has no ongoing expenses after Creative Cloud software is downloaded on to a computer.

15.     Prior to April 2012, Defendant offered for sale, for a one-time fee, the license to use its Creative Suite software bundle.

16.     In or around April of 2012, in a company shift towards a subscription-based service for its software, Defendant announced the introduction of Adobe Creative Cloud, a subscription-based version of Defendant's popular Creative Suite software bundles.  The switch to a subscription based model would create a recurring revenue stream for Defendant that was not be available when all consumers paid a one-time fee for a software license.  To encourage customers to select the subscription-based plan over the one-time fee software bundle, Defendant provided regular upgrades and ad-ons for subscription software that were not available with the one-time fee bundle.

17.     In or around May of 2013, Defendant announced that it would immediately stop selling its traditional Creative Suite desktop software and moved entirely to a subscription-based model.  With no option other than a subscription-based service, consumers who would have previously paid a one-time fee for a Creative Suite software license, would now have to pay a monthly subscription to Creative Cloud.  Defendant currently sells annual subscriptions to Adobe Creative Cloud, the analog to Creative Suite, for $49.99 per month for one year. Defendant also provides annual subscriptions to individual programs within Creative Cloud, such as Photoshop, for $9.99 per month.  Consumers who commit for one year are subject to a penalty if they cancel their subscription before the end of the one-year period.

18.     In 2013, the increased Creative Cloud sales were already showing up in Adobe's revenue.  Revenue from subscriptions – which include Creative Cloud and Adobe's marketing products – grew from $160 million in the second quarter of 2012 to $255 million in the same quarter in 2013.  As one commentator explained, "subscription payments will keep adding up as the million users on Creative Cloud keep steadily paying for the software indefinitely, rather than paying a lump sum up front."  As Adobe CFO Mark Garrett noted, subscriptions lead to a "more predictable revenue model which will drive higher long-term growth."

19.     Defendant's ETF is designed to maintain recurring revenue by preventing subscribers from cancelling rather than to compensate for any damages sustained by Defendant as a result of a customer's cancellation.  Indeed, to cancel, subscribers must contact a service representative rather than cancelling through the "Cancel" link on their Adobe accounts online. When a customer contacts a representative to cancel, the representative does not immediately cancel the subscription but instead asks "would you be willing to maintain your membership through annual commitment & avoid the cancellation fee if I offer you the next month of your membership for free?"

20.     The Membership Plan has at all times relevant hereto included a "Cancellation" provision which provides for the imposition of ETFs.  The Cancellation provision provides:

> We'd hate to see you go, but if you cancel within the first 30 days, we'll give you a full refund.  Otherwise, you'll be billed 50% of your remaining contract obligation.

21.     Defendant's adhesion contracts contemplate a single definite performance, payment of monthly fees for service for one year, with an additional charge, an ETF, contingent on the breach of that performance.  Defendant's unreasonably high ETF is a penalty for a customer's breach of contract.

22.     Defendant has in fact imposed such ETFs on, and collected them from, Plaintiff and other members of the proposed class.

23.     Defendant has collected significant revenues from imposing ETFs on Plaintiff and the members of the proposed class.

24.     If and to the extent that Defendant suffers, would suffer or has suffered any damage upon early cancellation, it is neither impracticable nor extremely difficult to fix the actual damage.  Furthermore, if and to the extent that Defendant suffers, would suffer, or has suffered any damage upon early cancellation, the ETFs are not a reasonable measure or approximation of such damages and do not provide fair average compensation therefor.  Moreover, they are – and under the circumstances existing at the time the Membership Plan was made, were – unreasonable.  Payment of 50% of the remaining contract obligation is unreasonable for cancellation of a web-based subscription service, and does not reflect a reasonable endeavor by Defendant to fix fair average compensation for its losses, if any, that it incurs, would incur or has incurred by virtue of early cancellations.  In fact, because Adobe has no expenses after a subscriber downloads Creative Cloud Software to a computer, 50% of the remaining contract obligation is a windfall for Adobe.  The ETFs were not negotiated or discussed with Plaintiff or the members of the proposed class.

25.     The ETFs imposed by Defendant are unconscionable, void and unenforceable under Civil Code § 1671(d), constitute an unlawful, unfair and deceptive practice under the UCL, and violate the CLRA.

**CLASS ACTION ALLEGATIONS**

26.     Plaintiff brings this action on his own behalf and on behalf of all other persons similarly situated pursuant to the provisions of Fed. R. Civ. Proc. 23.

Plaintiff seeks certification of the following class (the "Class"):

A nationwide class of all current and former consumer subscribers of Defendant's Creative Cloud or individual programs within Creative Cloud in the United States who are subject to, were charged and/or paid an ETF or other fee related to the cancellation of service.  Any judicial officer to whom the Action is assigned is excluded from the Class

27.     <u>Numerosity of the Class</u>: The Class is composed of at least thousands of individuals who are or were subscribers to Defendant's Creative Cloud pursuant to the Membership Plan, the joinder of which in one action would be impracticable.  The disposition of their claims through this class action will benefit both the parties and the Court.  The identities of individual members of the Class is ascertainable through Defendant's billing records.

28.     <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Such questions include, but are not limited to, the following:

a.     Whether Defendant's ETFs are illegal, void and unenforceable contractual penalties pursuant to Civil Code § 1671(d);

b.     Whether damages are extremely difficult or impracticable to determine;

c.     Whether Defendant conducted a reasonable endeavor, prior to imposing the ETFs or including them in the Membership Plan, to fix fair average compensation for losses, if any, that it suffers when customers pay late, and if so, whether the ETFs reflect the results of such a reasonable endeavor.

d.     Whether Defendant's ETFs are unconscionable;

e.     Whether Defendant's ETFs violate the UCL;

f.     Whether Defendant's ETFs violate the CLRA;

g.     Whether Plaintiff and the proposed Class members are entitled to restitution of ETFs paid to Defendant;

h.      Whether Plaintiff and the proposed Class members are entitled to an award of reasonable attorneys' fees, pre-judgment interest and costs of this suit; and

i.      Whether Defendant should be enjoined from collecting the ETFs from members of the proposed Class and/or from enforcing the ETF provisions in their existing contracts.

29.    <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class in that Plaintiff subscribed to Creative, and was subject to, charged and paid an ETF.  Plaintiff and the proposed Class members have similarly suffered harm arising from Defendant's violations of the law, as alleged herein.

30.    <u>Adequacy</u>: Plaintiff is an adequate representative of the proposed Class.  His interests do not conflict with, and are not antagonistic to, the interests of the members of the Class.  He will fairly and adequately represent and protect the interests of the Class.

31.    <u>Superiority</u>:  A class action is superior to other available means for the fair and efficient adjudication of Plaintiff's and the proposed Class members' claims.  Plaintiff and the members of the proposed Class have suffered irreparable harm as a result of Defendant's unfair, unlawful, and unconscionable conduct.  Because of the size of each of the individual Class member's claims, few, if any, proposed Class members could afford to seek legal redress for the wrongs complained of herein.  Absent a class action, the proposed Class members will continue to suffer losses and the violations of law described herein will continue without remedy, and Defendant will be permitted to retain the proceeds of its misdeeds.  Defendant continues to engage in the unlawful, unfair, and unconscionable conduct that is the subject of this complaint.

## FIRST CAUSE OF ACTION
### Violation of California Civil Code § 1671(d)

32.    Plaintiff incorporates herein by reference the allegations contained in all preceding paragraphs of this complaint.

33.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

34.     The ETFs are impermissible liquidated damages provisions under California law. The ETFs themselves, the contractual provisions that provide for them and their imposition and collection by Defendant violate Civil Code § 1671(d) and are unlawful, void and unenforceable under that statute.

35.     Civil Code § 1671(d) states that a contractual provision, in a contract for the retail purchase or rental of personal property or services primarily for the party's personal, family, or household purposes, liquidating damages for the breach of the contract, is void except that the parties to such a contract may agree therein on an amount that shall be presumed to be the amount of the damage sustained by a breach thereof, when, from the nature of the cause, it would be impracticable or extremely difficult to fix that actual damage.  The Membership Plan is a contract for the purchase of services primarily for personal, family or household use of Plaintiff and the members of the Class.

36.     If and to the extent that Defendant suffers, would suffer or has suffered any damages due to early cancellation by Plaintiff or members of the Class, it would not be impracticable, nor would it be extremely difficult, to determine them with certainty. Furthermore, the liquidated damages in the Membership Plan do not reflect a reasonable endeavor by Defendant to fix fair average compensation for any harm that Defendant would suffer, may suffer or has suffered, if any, from the early cancellations.  The Membership Plan is a contract of adhesion drafted by Defendant and/or its subsidiaries or affiliates, and presented to prospective subscribers on a "take it or leave it" basis with no opportunity for any prospective subscriber to negotiate any of its terms and conditions.  The ETF provision in the Membership Plan is a liquidated damages provision that fails to comply with the standards set forth in Civil Code § 1671(d), and therefore constitutes an impermissible contractual penalty.  Defendant's imposition of ETFs on Plaintiff and the members of the Class violates, and at all times relevant here to has violated, § 1671(d).  Defendant's collection of ETFs from Plaintiff and the members of the Class likewise violates, and at all times relevant hereto has violated, Civil Code § 1671(d).

37.     Plaintiff and the members of the Class have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein.

38.     Pursuant to Civil Code § 1671(d), Plaintiff, on behalf of himself and the members of the Class, seeks injunctive relief, restitution, compensatory damages as requested herein, and any other relief this Court deems appropriate.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## SECOND CAUSE OF ACTION
### Violation of the Consumers Legal Remedies Act,
### California Civil Code §§ 1750 *et seq*.

39.     Plaintiff incorporates herein by reference the allegations contained in all preceding paragraphs of this complaint.

40.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

41.     Defendant has engaged in deceptive practices, unlawful methods of competition and/or unfair acts as defined by Civil Code § 1750, *et seq*., to the detriment of Plaintiff and the members of the Class.  Plaintiff and the members of the Class have suffered harm as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein.

42.     Defendant intentionally, knowingly, and unlawfully perpetrated harm upon Plaintiff and the Class members by inserting unconscionable, unenforceable and illegal provisions in its Membership Plans with Plaintiff and the Class members in violation of Civil Code § 1770(a)(19), and by enforcing those provisions.  By inserting unconscionable, unenforceable and void ETF provisions in the Membership Plan, and then enforcing those provisions by imposing and collecting ETFs, Defendant also violated Civil Code § 1770(a)(14), which prohibits Defendant from representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.

43.     Defendant's policy and practice with respect to its inclusion of ETFs in its Membership Plan and its collection of ETFs is unlawful, unethical, oppressive, fraudulent and

malicious. The gravity of the harm to all consumers from Defendant's policies and practices far outweighs any purported utility those policies and practices have.

44. Plaintiff and the members of the Class have suffered harm as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein and will continue to suffer such harm if Defendant's illegal practices are not abated.

45. Plaintiff has complied with California Civil Code § 1782(a) by serving a preliminary notice, attached as Exhibit A, before filing a complaint for damages under the Consumers Legal Remedies Act, Cal. Civil Code § 1750, *et seq.*

46. Defendant has failed to remedy its conduct as demanded in Plaintiff's preliminary notice.

47. Pursuant to the provisions of Cal. Civ. Code § 1780, Plaintiff, on behalf of himself and the members of the Class, seeks injunctive relief, restitution, compensatory and punitive damages as requested herein, and any other relief this Court deems appropriate.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

### THIRD CAUSE OF ACTION
**Unlawful Business Practices in Violation of the Unfair Competition Law
California Business and Professions Code §§ 17200 *et seq.***

48. Plaintiff incorporates herein by reference the allegations contained in all preceding paragraphs of this complaint.

49. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

50. Defendant's continuing imposition, enforcement and collection of unlawful, unconscionable and unenforceable ETFs constitutes an unlawful business practice in violation of Bus. & Prof. Code §§ 17200 *et seq.* Plaintiff and the members of the Class have suffered harm as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein.

51. Civil Code § 1671(d) states that a provision in a contract liquidating damages for the breach of the contract is void except that the parties to such a contract may agree therein on an amount that shall be presumed to be the amount of the damage sustained by a breach thereof,

1  when, from the nature of the case, it would be impracticable or extremely difficult to fix the

2  actual damage.

3       52.    The ETFs charged by Defendant to, and collected by Defendant from, Plaintiff

4  and the members of the Class are unlawful liquidated damages provisions under Civil Code §

5  1671(d) for the reasons set forth above.  As a result of its inclusion of the ETF provisions in the

6  Membership Plan, and its imposition and collection of the ETFs, Defendant has violated Civil

7  Code § 1671(d).

8       53.    The inclusion of the ETF provision in the Membership Plan, and Defendant's

9  imposition of the ETFs on, and collection of the ETFs from, Plaintiff and the members of the

10  Class also violate Civil Code § 1670.5 because the ETFs are unconscionable.  Prospective

11  subscribers have no meaningful choice with respect to the inclusion of the ETFs in the

12  Membership Plan or in the amount of the ETFs.  The Membership Plan is drafted by Defendant

13  and presented to prospective subscribers on a "take it or leave it" basis with no opportunity or

14  possibility of negotiating any different terms and conditions with Defendant. The ETFs are

15  unreasonably favorable to Defendant and unduly harsh with respect to Defendant's customers,

16  and therefore, are substantively unconscionable.  For example, the ETFs have no relationship

17  whatsoever to any damages incurred by Defendant, if any, as a result of early cancellation by

18  subscribers.

19       54.    The ETFs charged to Plaintiff and the members of the Class also violate the

20  Consumers Legal Remedies Act, Civil Code § 1750 *et seq.*, as they are unconscionable,

21  unenforceable and illegal provisions in violation of Civil Code §§ 1770(a)(14) and 1770(a)(19).

22       55.    By violating the foregoing laws, Defendant's business practices violated the

23  "unlawful" prong of the UCL.

24       56.    Plaintiff and the members of the Class have suffered an injury in fact resulting in

25  the loss of money or property as a result of having paid the ETFs.

57.     Pursuant to Bus. & Prof. Code § 17203, Plaintiff seeks an order of this Court permanently enjoining Defendant from continuing to engage in its unfair and unlawful conduct as alleged herein.  Plaintiff also seeks, *inter alia*, an order requiring Defendant to:

        a.     Immediately cease its unlawful acts and practices;

        b.     Make full restitution of all monies wrongfully obtained; and

        c.     Disgorge all ill-gotten revenues and/or profits.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

### FOURTH CAUSE OF ACTION

**Unfair Business Practices in Violation of the Unfair Competition Law**
**California Business and Professions Code §§ 17200 *et seq*.**

58.     Plaintiff incorporates herein by reference the allegations contained in all preceding paragraphs of this complaint.

59.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

60.     The conduct of Defendant, as herein alleged, constitutes an unfair business practice within the meaning of Bus. & Prof. Code §§ 17200, *et seq*.

61.     Defendant violated the "unfair" prong of the UCL by requiring subscribers to enter into contracts of adhesion that include a penalty for breach, the ETF provision, by enforcing the contractual provisions that provide for the imposition of the ETFs and by imposing and collecting the ETFs.

62.     Defendant's said practices with respect to the ETFs violate the "unfair" prong of the UCL because the ETFs: (1) constitute unfair and wrongful penalties inconsistent with the language and policy of Civil Code § 1671; and (2) constitute unconscionable provisions, in violation of various laws and policies recognized by the California Legislature and the California courts, including without limitation Civil Code § 1670.5 and the CLRA.

63.     Defendant's said practices with respect to the ETFs also violate the "unfair" prong of the UCL because the utility of the ETFs is significantly outweighed by the gravity of the harm that they impose on consumers.  The ETFs have limited or no utility as compared with

alternatives that would more fairly measure the harm (if any) incurred by Defendant when a subscriber makes an early cancellation. The gravity of the harm that the ETFs impose on consumers is substantial in that they exceed the actual amount of harm (if any) incurred by Defendant when a subscriber makes an early cancellation. Through its imposition and collection of the ETFs from the members of the Class, Defendant has been massively and unjustly enriched. Defendant's ETFs also violate the "unfair" prong of the UCL because their inclusion in the Membership Plan, imposition and collection are and at all times relevant hereto have been oppressive, unscrupulous or substantially injurious to consumers.

64. Defendant's said practices with respect to the ETFs also violate the "unfair" prong of the UCL because the ETFs, the provision of the Membership Plan imposing the ETFs, and Defendant's enforcement of them through the imposition and collection thereof cause substantial harm that is not outweighed by countervailing benefits to consumers or competition, and consumers could not reasonably have avoided the harm.

65. Defendant's practices with respect to the ETFs also violate the "unfair" prong of the UCL for the reasons set forth in the Third Cause of Action, above.

66. Plaintiff and the members of the Class have suffered an injury in fact resulting in the loss of money or property as a result, *inter alia*, of having paid the ETFs.

67. Pursuant to Bus. & Prof. Code § 17203, Plaintiff seeks an order of this Court permanently enjoining Defendant from continuing to engage in its unfair and unlawful conduct as alleged herein. Plaintiff also seeks an order, *inter alia*, requiring Defendant to:

        a.     Immediately cease its unlawful acts and practices;

        b.     Make full restitution of all monies wrongfully obtained; and

        c.     Disgorge all ill-gotten revenues and /or profits.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the members of the Class, prays:

A.      For an order certifying the Class and appointing Plaintiff and the undersigned counsel of record to represent the Class;

B.      For a permanent injunction enjoining Defendant, its joint ventures, subsidiaries, agents, servants, and employees, and all persons acting under, in concert with them directly or indirectly, or in any manner, from in any way engaging in the unfair and unlawful practices and violations of law set forth herein;

C.      For full restitution of all funds acquired from Defendant's unfair business practices and other violations of law, including disgorgement of profits;

D.      For imposition of a constructive trust upon all monies and assets Defendant has acquired as a result of their unfair practices;

E.      For compensatory and punitive damages according to proof;

F.      For a judicial declaration regarding the validity of Defendant's liquidated damages provisions in the Membership Plan;

G.      For costs of suit herein;

H.      For both pre- and post-judgment interest on any amounts awarded;

I.      For payment of reasonable attorneys' fees; and

J.      For such other and further relief as the Court may deem proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.


Dated:  June 27, 2014                    Respectfully submitted,

                                         **BURSOR & FISHER, P.A.**


                                         By:    */s/ L. Timothy Fisher*
                                              L. Timothy Fisher

                                         L. Timothy Fisher (State Bar No. 191626)
                                         Annick M. Persinger (State Bar No. 272996)
                                         Yeremey Krivoshey (State Bar No. 295032)
                                         1990 North California Boulevard, Suite 940
                                         Walnut Creek, CA  94596
                                         Telephone: (925) 300-4455

Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
              apersinger@bursor.com
              ykrivoshey@bursor.com

*Attorneys for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Scotty Mahlum, declare as follows:

1.      I am a plaintiff in this action. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.      The Complaint filed in this action is filed in the proper place for because Defendant Adobe Systems is headquartered and has its principal place of business in this District at 345 Park Ave, San Jose, California 95110. Adobe Systems also conducts substantial business in this District.

3.      I subscribed to Adobe Creative Cloud services for family use. When I cancelled my subscription, I was charged and paid an unlawful cancellation fee.

4.      I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on June _10_, 2014.


_____
Scotty Mahlum

**EXHIBIT A**

# BURSOR & FISHER

P.A.

1990 N. CALIFORNIA BLVD.
SUITE 940
WALNUT CREEK, CA 94596
www.bursor.com

ANNICK M. PERSINGER
Tel: 925.300.4455
Fax: 925.407.2700
apersinger@bursor.com

May 22, 2014

*Via Certified Mail - Return Receipt Requested*

Adobe Systems, Inc.
Attn: Karen Robinson
345 Park Ave
San Jose, CA 95110

Re:     *Demand Letter Pursuant to California Civil Code § 1782*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by Adobe Systems, Inc. ("Adobe" or "You"), on behalf of my client, Scotty Mahlum, on behalf of himself and all other persons similarly situated.

Mr. Mahlum subscribed to Adobe Creative Cloud ("Creative Cloud") for consumer purposes pursuant to a contract of adhesion imposed on him and other Creative Cloud subscribers (the "Agreement"). The Agreement was drafted in its entirety by Adobe and presented to Mr. Mahlum and other subscribers on a take-it-or-leave-it, no negotiation basis. The Agreement imposes a 50% early termination fee. Adobe has imposed early termination fees on Mr. Mahlum and on other Creative Cloud subscribers. Mr. Mahlum paid the early termination.

The early termination fee imposed on Mr. Mahlum and other Creative Cloud subscribers are unlawful, void and unenforceable contractual penalties pursuant to California Civil Code § 1671 ("§ 1671"). The provision of the contracts imposing the early termination fee is unconscionable, and the early termination fee itself is unconscionably high. Both the inclusion of the clause providing for the early termination fee in the adhesion contracts for Creative Cloud subscriptions and collection of the early termination fees violate § 1671 and constitute unfair, fraudulent and illegal business practices in violation of the California Unfair Competition Law, California Business & Professions Code §§ 17200 *et seq*. The collection of the early termination fees from Creative Cloud subscribers has unjustly enriched Adobe such that it would be inequitable for Adobe to retain the early termination fees that it has collected from its Creative Cloud subscribers. Both the inclusion of the clause providing for the early termination fee in the adhesion contracts and Adobe's assessment of the early termination fees on, and collection of the early termination fees from, Mr. Mahlum and other Creative Cloud subscribers also are and were in violation of the California Consumer Legal Remedies Act, California Civil Code §§ 1750 *et seq*., including without limitation California Civil Code §§ 1770(a)(14) and (a)(19). As to Mr.

BURSOR&FISHER
P.A.

Mahlum and similarly situated Creative Cloud subscribers, this letter is sent pursuant to the provision of California Civil Code section 1782.

We hereby demand that You immediately (1) cease and desist from disseminating and entering into contracts containing the unlawful early termination fee penalty provision; (2) cease and desist from requiring Creative Cloud subscribers to agree or adhere to contracts containing the early termination fee provision as a condition of obtaining Creative Cloud services; (3) cease and desist from enforcing the unlawful contractually imposed early termination fee provision on current and former Creative Cloud subscribers; and (4) refund all early termination fees heretofore paid to Adobe or any agent of Adobe by or on behalf of any Creative Cloud subscriber.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1. All documents and electronically stored information which contain, refer, or relate to the early termination fee provision in Adobe's contracts with customers;

2. All documents and electronically stored information which comprise, refer, or relate to the imposition of or demand for early termination fees on Adobe customers;

3. All documents and electronically stored information which contain, refer, or relate to representations made by Adobe to its Creative Cloud customers about early termination fees;

4. All documents and electronically stored information which comprise, refer, or relate to any forms of contract between Adobe and its Creative Cloud customers, in the United States, that purport to include an early termination fee provision, and all drafts of such contracts;

5. All documents and electronically stored information that constitute, refer, or relate to any attempt by anyone, including Adobe, its parents, subsidiaries, or affiliated companies, or its or their agents, employees, officers, directors, consultants, attorneys, or consultants, to calculate, determine, or justify the amount of the charge for any early termination fee provision, including without limitation the early termination fees, that was included, or considered at any time of inclusion, in any Creative Cloud customer contract, product guide, or tariff;

6. All documents and electronically stored information that contain, refer, or relate to the identities of Creative Cloud customers or former customers who paid early termination fees to Adobe or any agent of Adobe, and the dates and amounts of the early termination fees paid by such persons;

7. All documents and electronically stored information that comprise, refer, or relate to bills, invoices, demands for payment and other transactional documents reflecting

Your assessment of an early termination fee on any Creative Cloud customer or former customer;

8.  All documents and electronically stored information that refer or relate to the collection by Adobe, any agent of Adobe, or any collection agency or other person acting on behalf of Adobe, of any early termination fees from any Creative Cloud customer or former customer, or the payment of any early termination fees by any Creative Cloud customer or former customer;

9.  All documents and electronically stored information that show the amounts and aging of accounts receivable attributable to early termination fees.

Please comply with this demand within 30 days from your receipt of this letter.

We are willing to negotiate to attempt to resolve the demands asserted in this letter.  If you wish to enter into such discussions, please contact me immediately.  If I do not hear from you promptly, I will conclude that you are not interested in resolving this dispute short of litigation.  If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents promptly.

Very truly yours,

Annick M. Persinger