UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SCOTTY MAHLUM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ADOBE SYSTEMS INCORPORATED,<br><br>Defendant. | Case No.: 14-CV-02988-LHK<br><br>ORDER GRANTING MOTION TO DISMISS |

Scotty Mahlum ("Plaintiff") brings this action against defendant Adobe Systems, Inc. ("Adobe"). Plaintiff alleges that Adobe committed violations of the California Civil Code and Business and Professions Code. Before the Court is Adobe's motion to dismiss. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Adobe's motion to dismiss, for the reasons stated below.

I.   BACKGROUND

    A.   **Factual Background**

Adobe is a multinational software maker headquartered in San Jose, California. Among its offerings, the company provides a subscription-based service for customers to use some of Adobe's

1

1   more popular software programs. ECF No. 1 ("Compl."), ¶ 2. Consumers can purchase annual
2   subscriptions to certain individual software programs, such as Adobe Photoshop, for $9.99 per
3   month. *Id*. ¶ 17. Alternatively, a consumer can purchase an annual subscription to what the
4   company terms its Adobe Creative Cloud "complete plan" ("Creative Cloud"), which grants the
5   subscriber access to a suite of software programs, for $49.99 per month. *Id*. The annual
6   subscription to the complete plan contains an early termination fee provision ("Creative Cloud
7   ETF" or "ETF"). *Id.* ¶ 20. The Creative Cloud ETF provides: "We'd hate to see you go, but if you
8   cancel within the first 30 days, we'll give you a full refund. Otherwise, you'll be billed 50% of
9   your remaining contract obligations." *Id*.

10   Plaintiff is a resident of Sacramento, California. *Id*. ¶ 8. In or around October 2013, Plaintiff
11   purchased a subscription to the Creative Cloud. *Id*. In or around March 2014, Plaintiff cancelled his
12   subscription and paid the 50 percent cancellation fee. *Id*.

13   **B.     Procedural Background**

14   On June 27, 2014, Plaintiff filed the instant lawsuit in this Court. *See* Compl. Plaintiff
15   alleges that Adobe's 50 percent cancellation fee violates California Civil Code § 1671(d) because it
16   is an unlawful liquidate damages provision, and therefore is void and unenforceable. *Id*. ¶¶ 32-34.
17   Plaintiff also contends that because the Creative Cloud ETF is void under § 1671(d), it is an
18   unconscionable contract provision prohibited by California Consumer's Legal Remedies Act, Civil
19   Code §§ 1750, *et seq*. *Id*. ¶¶ 41-43. Finally, Plaintiff contends, based on the foregoing allegations,
20   that Adobe committed unlawful and unfair business practices in violation of California Business
21   and Professions Code §§ 17200, *et seq*. *Id*. ¶¶ 48-58. Plaintiff seeks certification of a proposed
22   nationwide class "of all current and former consumer subscribers of Defendant's Creative Cloud or
23   individual programs within Creative Cloud . . . who are subject to, were charged, and/or paid an
24   ETF or other fee related to cancellation of service."[1] *Id*. ¶ 26.

---

[1] Plaintiff asserts that this Court has jurisdiction over the instant lawsuit pursuant to the Class Action Fairness Act. Compl. ¶ 10. The Class Action Fairness Act vests the federal courts with original jurisdiction over class actions that meet the following prerequisites: (1) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs"; (2) the parties meet minimal requirements for diversity, including that "any member of a class of plaintiffs is a citizen of a State different from any defendant"; and (3) the class equals to or exceeds 100

2
Case No.: 14-CV-02988-LHK
ORDER GRANTING MOTION TO DISMISS

On September 18, 2014, Adobe filed the instant motion to dismiss, seeking dismissal of all of Plaintiff's claims. ECF No. 13 ("Mot."). Adobe also filed a request for judicial notice. ECF Nos. 14 & 14-1. Plaintiff filed an opposition to Adobe's motion to dismiss on November 4, 2014. ECF No. 18 ("Opp'n"). Plaintiff also filed a request for judicial notice. ECF No. 19. Adobe filed a reply in support of its motion on December 2, 2014. ECF No. 20 ("Reply").

## II.  LEGAL STANDARD

### A.  Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "'a plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew,* 60 F.3d 1234, 1239 (7th Cir. 1995)).

---

individuals in the aggregate. 28 U.S.C. § 1332(d). Jurisdiction is not at issue in the instant motion to dismiss.

**B.     Leave to Amend**

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted). When dismissing a complaint for failure to state a claim, "'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id.* at 1130 (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (internal quotation marks omitted)). Accordingly, leave to amend is denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

**III.    DISCUSSION**

**A.     The Parties' Requests for Judicial Notice**

The Court first addresses Plaintiff's and Adobe's requests for judicial notice. Although a court generally may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion, the Court may take judicial notice of documents in the public record without converting a motion to dismiss into one for summary judgment. *See Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001) *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002). In addition, the Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Public records, including court documents, are proper subjects of judicial notice. *See, e.g., United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007).

Here, Adobe requests judicial notice of a court order in a federal case relevant to the instant lawsuit. ECF No. 14. Court documents are proper subjects of judicial notice. *See Black*, 482 F.3d at 1041. Therefore, Adobe's request for judicial notice is GRANTED. In addition, Plaintiff requests

judicial notice of two court filings made in a related state court lawsuit. ECF No. 19. Again, because court documents are generally proper subjects of judicial notice, Plaintiff's request for judicial notice is GRANTED.

### B.   Adobe's Motion to Dismiss

Adobe moves to dismiss Plaintiff's Complaint in its entirety. The crux of Adobe's motion to dismiss is that Plaintiff fails to sufficiently allege that the Creative Cloud ETF is a liquidated damages provision prohibited by California Civil Code § 1671(d).[2] Mot. at 4. Rather, Adobe argues that the ETF is an alternative means of performance under California law, and accordingly falls outside the scope of § 1671(d). *Id*. at 5. Adobe contends this is the case because the ETF provides a customer with the option to either continue to receive services under the Creative Cloud subscription plan and pay the remaining monthly installments, or cancel and pay 50 percent of the customer's remaining obligations under the contract. *Id*. Adobe asserts that, as a matter of law, this is not a liquidated damages provision. *Id*. Adobe also contends that the ETF is not a liquidated damages provision because it is not imposed as a result of breach, and the ETF is not a fixed sum in addition to the contract amount. *Id*. at 8-9. Plaintiff opposes Adobe's motion, on two grounds. First, Plaintiff argues that this Court cannot determine whether the ETF is a liquidated damages provision or an alternative means of performance on a motion to dismiss. Opp'n at 1. This is because, according to Plaintiff, whether a contract provision is an alternative means of performance or a liquidated damages provision "raises factual issues that cannot be resolved on a motion to dismiss." *Id*. at 10 (internal quotation marks omitted). Second, Plaintiff argues that he sufficiently alleges that the ETF meets the definition of an invalid liquidated damages provision under California law. *See, e.g.*, *id.* at 2-5. The Court will first address the sufficiency of Plaintiff's § 1671 claim, then will address the Plaintiff's remaining claims.

---

[2] Adobe also moves to dismiss Plaintiff's claims under Civil Code §§ 1750 *et seq.*, and his claims under California Business and Professions Code §§ 17200 *et seq.* Mot. at 9-12. In his opposition, Plaintiff concedes that his claims under Civil Code §§ 1750 *et seq.* and California Business and Professions Code §§ 17200 *et seq.* are dependent on Plaintiff's claim under § 1671. Opp'n at 22. Accordingly, Adobe's motion to dismiss essentially winnows down to whether Plaintiff asserts a claim under § 1671.

5

Case No.: 14-CV-02988-LHK
ORDER GRANTING MOTION TO DISMISS

### 1. Plaintiff's Claim Under California Civil Code § 1671

California courts define liquidated damages as "'an amount of compensation to be paid in the event of a breach of contract, the sum of which is fixed and certain by agreement.'" *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1002 (9th Cir. 2002) (quoting *Kelly v. McDonald,* 98 Cal. App. 121, 125 (1929)). California Civil Code § 1671 "prescribes the rules or standard for determining the validity of a provision" in a contract for liquidated damages. Cal. Civ. Code § 1671(a). Subsection (d), the subsection which Plaintiff alleges Adobe violates here, provides that "a provision in a contract liquidating damages for the breach of the contract is void except that the parties to such a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage." *Id.* § 1671(d). Put another way, a liquidated damages clause will be construed as an unenforceable penalty, unless there is a relationship between the liquidated damages and the damages the parties anticipated would result from a breach. *Ridgley v. Topa Thrift & Loan Ass'n.*, 17 Cal. 4th 970, 977 (1998). "[W]hether a contractual provision is an unenforceable liquidated damages provision is one for the court." *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1314 (2005). In analyzing a provision to determine if it is an unenforceable liquidated damages clause, a court must "look to substance rather than form" to determine "the true function and character" of the clause. *Blank v. Borden*, 11 Cal. 3d 963, 970 (1974) (internal quotation marks omitted).

However, under California law "[w]here a contract for a specified period of time permits a party to terminate the agreement before its expiration in exchange for a lump-sum monetary payment, the payment is considered merely an alternative to performance, and not a penalty." *Morris*, 128 Cal. App. 4th at 1314 (citing *Blank*, 11 Cal.3d at 970). Such a clause, therefore, falls outside the scope of § 1671(d) and is not prohibited. *Id. Blank* is the leading California Supreme Court case on this issue. In *Blank*, the plaintiff, a real estate broker, and defendant, a homeseller, entered into a contract for the purpose of securing a purchaser for defendant's weekend home. *Blank*, 11 Cal. 3d at 966. The contract granted the plaintiff the exclusive and irrevocable right to sell the property during a specified seven-month period. *Id.* The contract also provided that if the

property was, *inter alia*, "withdrawn from sale" without consent of the plaintiff, the plaintiff would receive 6 percent of the "price of the property." *Id*. (emphasis omitted). The defendant subsequently withdrew the house from sale without the plaintiff's consent. *Id*. at 967. In the ensuing lawsuit, the defendant argued that the provision providing plaintiff with 6 percent of the price of the property was a liquidated damages provision and unenforceable under § 1671. *Id*. at 969.

The California Supreme Court disagreed with the defendant. Rather, the Court held that the contract provision at issue was an alternative means of performance, not a liquidated damages clause. *Id*. at 970. The Court so held for two principle reasons. First, the Court noted that the provision at issue "in no sense contemplate[d] a 'default' or 'breach' of an obligation" to trigger the 6 percent payment. *Id*. To the contrary, "the clause in question presents the owner with a true option or alternative: if, during the term of the [contract], the owner changes his mind and decides that he does not wish to sell the subject property after all, he retains the power to terminate the agent's otherwise exclusive right through the payment of a sum certain set forth in the contract." *Id*. Accordingly, because the contract provision was not triggered by a breach and instead provided a "true option or alternative," it was not a liquidated damages provision prohibited by § 1671(d). *Id*.

Second, the Court held that the contract provision was not an unenforceable liquidated damages provision because it did not contain "the invidious qualities characteristic of a penalty or forfeiture." *Id*. The Court held that what distinguished the clause at issue in *Blank* from other instances in which the Court had found contracts to contain impermissible liquidated damages provisions was the "element of rational choice." *Id*. At the time the plaintiff and defendant in *Blank* entered into their contract, the "contract clearly reserve[d] to the owner the power to make a realistic and rational choice in the future with respect to the subject matter of the contract." *Id*. at 971. Specifically, the contract reserved to the owner the right to "change his mind" and "withdraw his property from the market upon payment of a sum certain." *Id*. In that sense, the contractual provision at issue in *Blank* was an alternative to the defendant's performance of the contract. *Id*.

7

Case No.: 14-CV-02988-LHK
ORDER GRANTING MOTION TO DISMISS

California courts have since interpreted *Blank* to stand for the proposition that where a contract provision for a "specified period of time permits a party to terminate the agreement before its expiration in exchange for a lump-sum monetary payment, the payment is considered merely an alternative to performance, and not a penalty." *Morris*, 128 Cal. App. 4th at 1314; *see also Hedstrom v. Truxtun Radiology Med. Grp.*, No. F056068, 2009 WL 2139061, at *3 n.1 (Cal. Ct. App. July 20, 2009) (a contractual "provision that authorizes payment in exchange for early termination is generally considered an alternative to performance and not a penalty."); *Jaquez v. Prot. One Alarm Monitoring, Inc.*, No. B245829, 2014 WL 962601, at *6 (Cal. Ct. App. Mar. 12, 2014) (same). Accordingly, such a contract provision is not void under § 1671(d). *See, e.g.*, *Morris*, 128 Cal. App. 4th at 1315.

The Ninth Circuit, citing *Blank*, has similarly held that where a contract for a specified period of time permits a party to terminate the contract by paying a fee, the payment is an alternative to performance and not barred by California law. *See Schneider v. Verizon Internet Servs., Inc.*, 400 F. App'x 136, 137-39 (9th Cir. 2010) (defined-length contract for Internet service which allowed the plaintiff to cancel the contract early for a $99 early termination fee provided an alternative to performance and was not void under California law); *Hutchison v. Yahoo! Inc.*, 396 F. App'x 331, 333-34 (9th Cir. 2010) (one-year contract for phone and Internet service which allowed the plaintiffs to cancel the contract early for a $200 early termination fee provided an alternative to performance and was not void under California law, even when plaintiffs canceled the contract with two weeks remaining on its term).

The Court finds the California Supreme Court opinion in *Blank* to be dispositive of Plaintiff's claim here. According to Plaintiff's Complaint, the Creative Cloud ETF permitted the subscriber to cancel his or her year-long subscription at any time, provided that the subscriber pays 50 percent of the remaining obligations under the agreement. Compl. ¶ 20. As in *Blank*, the ETF by its plain terms does not contemplate that the subscriber breach the agreement, such as by failing to pay monthly subscription fees. Rather, the ETF provides the subscriber "with a true option or alternative": if the subscriber changes his or her mind after entering into the agreement and desires to cancel the subscription, the subscriber can do so "through the payment of a sum certain set forth

8

1   in the contract." *Blank*, 11 Cal. 3d at 970. Therefore, because the ETF is not imposed as a result of
2   breach, it is not a liquidated damages clause within the meaning of § 1671(d).[3] *Id*. Moreover,
3   although Plaintiff alleges in conclusory fashion that the ETF is imposed as a result of "breach,"
4   Compl. ¶ 21, Plaintiff only alleges that the ETF is imposed upon the customer's affirmative and
5   voluntary *cancellation* of the subscription agreement, *see id.* ¶ 19 (alleging the ETF is "designed to
6   maintain recurring revenue by preventing subscribers from *cancelling . . .*") (emphasis added); *id.*
7   ¶ 20 (ETF provision providing that "if *you cancel*" the ETF will be imposed) (emphasis added).
8   Moreover, Plaintiff seeks to represent a class of subscribers who "were charged and/or paid an ETF
9   or other fee related to the *cancellation*" of their subscription agreements. *Id*. ¶ 26 (emphasis added).
10  According to *Blank*, there is a difference between a party breaching a contract, and that party
11  paying a fee for the right to cancel the contract before its term expires, with the latter generally not
12  falling within the prohibitions of § 1671(d). *Blank*, 11 Cal. 3d at 970.

13  In addition, the ETF does not possess what the California Supreme Court deemed "the
14  invidious qualities characteristic of a penalty or forfeiture." *Id*. To the contrary, as was the case in
15  *Blank*, the ETF "clearly reserves to the [subscriber] the power to make a realistic and rational
16  choice in the future with respect to the subject matter of the contract." *Id*. at 971. Specifically, the
17  ETF reserves to the subscriber the right to change his mind and end the subscription agreement by
18  paying a certain sum, in this case 50 percent of the subscriber's remaining contractual obligation.
19  Compl. ¶ 20. Such a contractual provision gives the subscriber a rational choice to pay the ETF in
20  the alternative to either (1) paying the subscriber's remaining obligations under the contract, and
21  therefore pay 50 percent more than the ETF, or (2) not making any remaining payments under the

---

[3] Plaintiff argues that the Creative Cloud ETF is imposed as a result of breach, citing to *Ruwe v. Cellco Partnership*, 613 F. Supp. 2d 1191 (N.D. Cal. 2009). At issue in *Ruwe* was a contract for mobile phone and data services which provided for a "reconnect fee" of $15. *Id*. at 1193. If the subscriber failed to make timely payments each month, the provider would suspend the subscriber's service, and only reinitiate the service once the subscriber paid the reconnect fee. *Id*. The *Ruwe* court denied defendant's motion to dismiss plaintiff's § 1671(d) claim, holding in relevant part that the plaintiff sufficiently alleged the reconnect fee was a liquidated damages provision because it was "triggered by nonpayment, which . . . [defendant] concedes constitutes breach under the [contract]." *Id*. at 1197. The *Ruwe* court also noted that the terms of the contract at issue provided that nonpayment of the monthly subscription fee constituted breach. *Id*. at 1196. Here, in contrast, as alleged in the Complaint, the Creative Cloud subscription agreement provides for the imposition of the ETF charge only upon the cancellation of the subscription by the subscriber.

9

Case No.: 14-CV-02988-LHK
ORDER GRANTING MOTION TO DISMISS

subscription agreement, and thereby commit breach. Due to the fact that the ETF presents the subscriber with this rational choice, it is not, according to *Blank*, a liquidated damages clause within the ambit of § 1671(d).

The California Court of Appeal recently considered an early termination fee similar to the Creative Cloud ETF, and deemed it to not be a liquidated damages provision barred by § 1671(d). In *Jaquez v. Protection One Alarm Monitoring, Inc.*, the plaintiff signed a three-year contract for a security alarm system and attendant services. 2014 WL 962601, at *1 (Cal. Ct. App. Mar. 12, 2014). The contract provided that if the plaintiff terminated the agreement prior to the end of the three-year term, the plaintiff would have to pay "an early cancellation fee as liquidated damages" of $750 or the amount the plaintiff owed on the remainder of the contract, whichever was lesser. *Id*. The plaintiff ended the contract before the three-year term was up, and filed suit to have the early termination fee declared unenforceable under § 1671(d). *Id*. The state court of appeal, citing *Blank*, held that the early termination fee was not barred by § 1671(d), even though the terms of the contract described it as a "liquidated damages clause." *Id*. at *6. This was because the early termination fee was "an alternative to performance that allows Jaquez to choose whether to fulfill the three year contract or pay an early termination fee." *Id*.; *see also id.* at *8 ("It is clear that the early termination fee provides Protection One's customers with the power to make a rational choice—to continue using Protective One's monitoring and alarm services or to pay an early termination fee. The early termination fee is thus an alternative to performance rather than an unlawful penalty.") Here, the Creative Cloud ETF is substantially identical to the one at issue in *Jacquez*. Indeed, the Creative Cloud ETF is arguably more favorable to the subscriber, as the Creative Cloud ETF provides that the subscriber will never pay more than 50 percent of his or her remaining contractual obligation. *See* Compl. ¶ 20. In contrast, the subscriber in *Jacquez* faced the possibility of paying an ETF *equivalent* to his or her remaining obligations under the contract. *Jacquez*, 2014 WL 962601, at *1. However, the California Court of Appeal held that such a fee was still deemed to give a consumer a "rational choice," and therefore was not a liquidated damages clause under California law. *Id.* at *8.

Plaintiff advances several arguments as to why this Court should not grant Adobe's motion to dismiss, but none are availing. As a preliminary matter, Plaintiff argues it would be inappropriate for this Court to grant Adobe's motion because the Court "cannot make a finding of alternative performance on the pleadings." Opp'n at 1. According to Plaintiff, determining whether the Creative Cloud ETF is a liquidated damages clause or an alternative to performance "raises factual issues that cannot be resolved on a motion to dismiss." *Id*. at 10. This is incorrect. "[W]hether a contractual provision is an unenforceable liquidated damages provision is one for the court." *Morris*, 128 Cal. App. 4th at 1314. "If the Court finds that the ETF's true function was as an alternative performance provision, then Section 1671 is inapplicable to the provision and [plaintiff's] claim fails as a matter of law." *Seraphin v. SBC Internet Servs., Inc.*, No. CV 09-131-S-REB, 2010 WL 1326820, at *4 (D. Idaho Mar. 29, 2010) (applying California law). Accordingly, whether the Creative Cloud ETF is a liquidated damages provision or one for alternate performance is an appropriate determination for this Court to make in ruling on a motion to dismiss. Indeed, both the Ninth Circuit and the California Court of Appeal have affirmed dismissals of claims based on § 1671(d). *See, e.g.*, *Schneider*, 400 F. App'x at 140 (affirming dismissal of § 1671(d) action because early termination fee was an alternative to performance, but remanding to grant plaintiff leave to amend); *Morris*, 128 Cal. App. 4th at 1316 (affirming trial court's granting of demurrer on grounds that contractual provision was an alternative to performance, not a liquidated damages clause).

Plaintiff's reliance on *In re DirecTV Early Cancellation Litigation*, 738 F. Supp. 2d 1062 (C.D. Cal. 2010), is not persuasive. In *In re DirecTV*, the district court denied a motion to dismiss plaintiffs' claim brought under § 1671(d), where the plaintiff alleged (1) a cancellation fee was charged to plaintiffs upon cancellation, with the fee alleged to be unlawful liquidated damages, (2) it would "neither [be] impractical nor extremely difficult for DirecTV to determine the actual amount of damages occasioned by" the cancellation; (3) the fee "bear[s] no reasonable relationship to the actual costs incurred by DirecTV when customers cancel their service"; and (4) the cancellation fee "is intended as a penalty." 738 F. Supp. 2d at 1090. The *In re DirecTV* court held that while it might ultimately decide the cancellation fee was an alternative means for performance,

11
Case No.: 14-CV-02988-LHK
ORDER GRANTING MOTION TO DISMISS

"this decision is best left to summary judgment or trial." *Id*. Here, Plaintiff argues that because his allegations are similar to the ones raised in *In re DirecTV*, dismissal of his complaint would be inappropriate. *See, e.g.*, Opp'n at 5. However, there is a key factual difference between the cancellation fee provisions at issue in *In re DirecTV* and in the instant case. In *In re DirecTV*, the defendant DirecTV could impose the cancellation fee on customers unilaterally and without the acquiescence of the customer. 738 F. Supp. 2d at 1069. DirecTV also could impose the cancellation fee without informing the customer. *Id*. California courts have found that, where a cancellation fee is alleged to be, *inter alia*, imposed involuntarily without customer consent, that can be sufficient to state a claim under § 1671(d). *See, e.g.*, *In re Cellphone Termination Fee Cases*, 193 Cal. App. 4th 298, 329 (2011) (noting the fact that cancellation fee was imposed involuntarily by defendant "confirm[ed] that at the time of contracting the provision was not understood or intended as providing only for a 'rational choice' of the customer.") Here, in contrast, the terms of the Creative Cloud ETF as alleged in Plaintiff's Complaint show that the ETF is only imposed upon the customer's affirmative cancellation. *See* Compl. ¶ 20. Plaintiff does not allege that Adobe imposes the ETF involuntarily on customers. Moreover, the *In re DirecTV* court did not explain why summary judgment or trial is best to address whether a cancellation fee is a liquidated damages provision or cite any supporting case law. *See* 738 F. Supp. 2d at 1090.

Alternatively, Plaintiff argues that the Creative Cloud ETF is a liquidated damages provision. Plaintiff principally relies on *Garrett v. Coast and Southern Federal Savings and Loan Association*, 9 Cal. 3d 731 (1973), which Plaintiff contends is "controlling." Opp'n at 11. At issue in *Garrett*, which the California Supreme Court decided one year prior to *Blank*, were promissory notes which provided that in the event of default, the obligor to the contract would pay 2 percent annual interest on the unpaid principal balance of the note. *Id*. at 735. The lower court sustained defendant's demurrer for failure to state a claim under §§ 1670 and 1671, and the California Supreme Court subsequently reversed. *Id.* at 734-35. In so doing, the Court held that "when it is manifest that a contract expressed to be performed in the alternative is in fact a contract contemplating but a single, definite performance with an additional charge contingent on a breach

of that performance, the provision cannot escape examination in light of the pertinent rules relative to the liquidation of damages." *Id*. at 738.

*Garrett* is distinguishable from the Creative Cloud ETF at issue here. In *Garrett*, the contract provision specified that in the event of "default," i.e. breach, the obligors would incur additional charges. *Id.* at 735. In contrast and as described earlier, the Creative Cloud ETF as alleged in Plaintiff's Complaint does not specify that the 50 percent fee becomes payable in the event of default. Compl. ¶ 20. Rather it is offered to the subscriber as an alternative to performance, because it gives the subscriber the option to terminate the contract early in exchange for a set payment. *See id*. As alleged by Plaintiff, the Creative Cloud ETF does not contemplate any breach between the parties. Accordingly, *Garrett* is inapposite.[4]

Plaintiff's reliance on *Seraphin v. SBC Internet Servs., Inc.*, is similarly misplaced. In *Seraphin*, the court denied a motion to dismiss plaintiff's § 1671(d) claim. 2010 WL 1326820, at *5. There, what the court found to be dispositive was the fact that the early termination fee at issue "was *always* more than the remaining payments" owed by the plaintiff under the contract, "even if he cancelled in the first month of his twelve month commitment." *Id.* at *5 (emphasis in original). Due to this fact, the court found that "it was apparent at the time of the contract that one mode of performance would be at all or at most times inferior," and accordingly the contract did not provide for a means of alternative performance. *Id.* Here, in contrast and as previously discussed, the Creative Cloud ETF provides that the subscriber will only pay up to 50 percent of his or her remaining obligations under the contract. *See* Compl. ¶ 20. Indeed, the California Court of Appeal has sustained a dismissal of a complaint alleging a § 1671(d) claim where the customer faced the possibility of paying the *entirety* of his remaining obligations under the contract, on the grounds

---

[4] For a similar reason, *In re Cellphone Termination Fee Cases*, upon which Plaintiff also relies, is inapplicable to the instant action. 193 Cal. App. 4th 298 (2011). *In re Cellphone* involved cancellation fees *involuntarily* imposed by the defendant on former subscribers as a result of *breach*. *See id.* at 328 ("Sprint *declared contracts breached*, terminated service, and imposed ETFs as liquidated damages *resulting from the asserted breaches*.") (emphasis added) (internal quotation marks omitted). The fact that the fees in *In re Cellphone* resulted from breaches and could be imposed involuntarily pushed them within the realm of § 1671. Indeed, the *In re Cellphone* court noted that "[i]f this case concerned a Sprint clause that stated customers could terminate term contracts early by paying a fee, then that fee might well be an alternative means of performance" and not a prohibited liquidated damages clause. *Id*. The latter is more akin to the situation here.

13
Case No.: 14-CV-02988-LHK
ORDER GRANTING MOTION TO DISMISS

that such a contract still presented the customer with a "rational choice." *See Jacquez*, 2014 WL 962601, at *8. *Seraphin* is therefore distinguishable.

Plaintiff further argues that the Creative Cloud ETF is not a means of alternate performance because it lacks some of the traits that an alternative to performance clause should possess. *See* Opp'n at 14-17 (arguing that the Creative Cloud ETF is not an alternative to performance because, for among other reasons, it does not contemplate a continuing relationship between the parties, and is not a mutually agreed-upon, bargained-for equivalent in exchange for return performance). However, Plaintiff cites no substantive California law that buttresses his argument. Moreover, Plaintiff's argument simply misses the mark: authority from both the California Supreme Court and the Ninth Circuit have held that when a contract for a specified time period permits a party to terminate the agreement before its expiration in exchange for payment of a certain sum, the payment is considered merely an alternative to performance, and not a penalty. *See, e.g.*, *Blank*, 11 Cal. 3d at 970; *Schneider*, 400 F. App'x at 137-39. Plaintiff offers no persuasive case law to rebut this rule or to illustrate why that rule should not apply to the Creative Cloud ETF.

As alleged in Plaintiff's Complaint, the Creative Cloud ETF is an alternative to performance, not a penalty. Therefore, it does not fall within the prohibition of § 1671(d). Adobe's motion to dismiss Plaintiff's claim under § 1671 is accordingly GRANTED. Furthermore, because the Court finds Plaintiff fails to state a claim for a violation of § 1671, the Court need not address Adobe's alternative arguments for dismissal.

### 2.   Plaintiff's Claims Under California Civil Code §§ 1750 *et seq*. and Business and Professions Code §§ 17200 *et seq*.

Adobe also moves to dismiss Plaintiff's remaining claims under Civil Code §§ 1750, *et seq*. and claims for unlawful and unfair business practices in violation of California Business and Professions Code §§ 17200, *et seq*. Plaintiff, in his opposition, concedes that these claims are wholly derivative of Plaintiff's claim under Civil Code § 1671. Opp'n at 22 ("Plaintiff's claims for violation of the Unfair Competition Law . . . and the California Legal Remedies Act . . . rise and fall with his Civil Code § 1671(d) claim."). Accordingly, because the Court finds that Plaintiff's § 1671 claim fails as a matter of law, Plaintiff's claims under Civil Code §§ 1750, *et seq*. and

Business and Professions Code §§ 17200, *et seq.* fail as well. Adobe's motion to dismiss Plaintiff's remaining claims is GRANTED.

### C.     Leave to Amend

Plaintiff requests that in the event the Court grants Adobe's motion to dismiss, Plaintiff be given leave to amend. Opp'n at 23. In general, when dismissing a complaint for failure to state a claim, a court should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d at 1127. Here, although the Court has determined that Plaintiff fails to state a claim under Civil Code § 1671, it is possible Plaintiff can cure his allegation by alleging, *inter alia*, that other provisions in the Creative Cloud subscription agreement make it apparent that the ETF is imposed as a result of breach. Accordingly, because Plaintiff may salvage his claim by alleging additional facts, the Court finds amendment would not be futile. Plaintiff's claims are therefore dismissed with leave to amend.

### IV.    CONCLUSION

For the reasons stated above, the Court GRANTS Adobe's motion to dismiss with leave to amend. Should Plaintiff choose to file an amended complaint, he must do so within 14 days of this Order. Failure to file an amended complaint that cures the deficiencies identified in this Order will result in dismissal of Plaintiff's claims with prejudice. Plaintiff may not add new claims or parties without leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: January 8, 2015

_____
LUCY H. KOH
United States District Judge